Edward G-. Baker, J.
Frederick May and Morris Novgrod (hereinafter referred to as May and Novgrod), individually and on behalf of others similarly situated, and M. Goldsmith Inc. (hereinafter referred to as Goldsmith), join as plaintiffs in this action in which they seek injunctive and declaratory relief. The defendant is Washington Cemetery (hereinafter referred to as the Cemetery), a corporation organized and existing under the Membership Corporations Law, which owns and operates a cemetery in the Borough of Brooklyn. The Cemetery Board of the State of New York (hereinafter referred to as the Board) has intervened as a defendant in the action pursuant to leave granted by order of this court duly made and entered. (Statutory references in this opinion are to the Membership Corporations Law, unless otherwise noted.)
May and Novgrod are the owners of plots and graves in the Cemetery. They and other such owners hire and pay Goldsmith, a commercial gardener, to care for and maintain the graves and plots owned by them. The number of graves so serviced by Goldsmith is approximately 10,000.
On or about December 23, 1959, there was filed in the office of the Division of Cemeteries an order or determination of the Board, made pursuant to the provisions of section 82, approving a schedule of charges which theretofore had been submitted by the trustees of the Cemetery. Included in this schedule is a charge upon “ outside gardener ” the legality of which is challenged in this action. It is imposed at the rate of $2 per grave, with a maximum of $10 per plot per annum, upon commercial gardeners retained by grave and plot owners to care for and maintain their graves and plots.
By letter dated January 26,1960, the Cemetery notified Goldsmith of the imposition of said charge, effective as of February 1, 1960. The letter states that the charges are “ to compensate the cemetery for use of roads and other facilities, general supervision, and to provide funds for needed repairs.” Goldsmith is required, on penalty of exclusion from the grounds, to inform the Cemetery office, two days prior to entry, of the graves and plots to be serviced, and to make payment of the charges immediately prior to entry.
*1048 The trial memorandum submitted by counsel for the Cemetery accurately summarizes the six causes of action stated in the complaint as follows: The first cause is that of the plaintiff owners, May and Novgrod. It alleges that the charge upon the outside gardener they have engaged is an unlawful interference with their right to care for, and have access to, the graves owned by them. The second cause, also asserted on their behalf, alleges that the imposition of the charge and its approval by the Board are beyond the powers conferred by the Membership Corporations Law. It is alleged that the charge will be passed on by the outside gardeners to the plaintiff owners.
The third and fourth causes, asserted in behalf of other owners similarly situated, are similar, respectively, to the first and second.
The fifth cause is asserted on behalf of the corporate plaintiff, Goldsmith, which complains that its exclusion from the Cemetery grounds unless it pays the charges prevents its performing its contract with the named plaintiff owners. The sixth cause asserts a like effect upon the performance of the corporation’s contracts with owners similarly situated.
Judgment is demanded declaring the outside gardener charge null and void, and that the individual plaintiffs and others similarly situated, and their agents, servants and employees, are entitled to ingress, egress and access to and from the graves and plots owned by the individual plaintiffs and others similarly situated, without interference by the defendant Cemetery, without charge and without two days ’ prior notice. Injunctive relief is sought to effectuate the declaratory relief demanded.
The answer of defendant Cemetery denies generally the material allegations of the complaint, and alleges by way of two affirmative defenses that plaintiffs are barred by lapse of time, judicial review of the order and determination of the Board not having been sought within 30 days from the date of filing thereof as required by section 106. Said defendant by way of counterclaim seeks judgment in the sum of $20,000 against plaintiff Goldsmith. The counterclaim alleges the Cemetery’s imposition of the outside gardener charge, the approval thereof by the Board, and the care by said plaintiff of 10,000 graves.
The answer of the intervening defendant, Board, alleges two affirmative defenses: (1) that judicial review of said order and determination was not sought in the manner and within the time limited therefor by section 1.06; and (2) that the schedule of charges fixed by defendant Cemetery was approved by the Board by order dated December 23,1959, and that said approval *1049 was within the power conferred on the Board hy article IX of the Membership Corporations Law.
The affirmative defenses alleging that review of the order and determination was not sought in the manner provided by section 106, and within the time limited therein, may be disposed of without extended discussion. Plaintiffs’ challenge is addressed not to the reasonableness of the charge assessed or imposed upon outside gardeners, but, rather, to the power of the Cemetery to impose, and the power of the Board to approve it. It is conceded that neither the Cemetery nor the Board may exercise a power not conferred by statute; and that, absent statutory sanction for the imposition of the charge, plaintiffs are entitled to appropriate relief in this action.
The right of an owner personally to care for his plot or plots, or to do so through another employed by him for the purpose, is not questioned. The issue, then, is narrowed to the single question: May the Cemetery, in the exercise of its statutory power to make reasonable rules and regulations for the use, care, management and protection of its property and of all lots, plots and parts thereof, impose a charge upon outside gardeners for the privilege of entering and using the Cemetery grounds in the performance of their contracts with such owners 1
Section 82, entitled “Rules, regulations and charges ”, provides, in part, as follows:
“ 1. The directors of a cemetery corporation shall make reasonable rules and regulations for the use, care, management and protection of the property of the corporation and of all lots, plots and parts thereof; for regulating the dividing marks between the lots, plots and parts thereof; for prohibiting or regulating the erection of structures upon such lots, plots or parts thereof; for preventing unsightly monuments, effigies and structures within the cemetery grounds, and for the removal thereof; for regulating the introduction and care of plants, trees and shrubs within such grounds; for the prevention of the burial in a lot, plot or part thereof, of a body not entitled to burial therein; for regulating or preventing disinterments; for regulating the conduct of persons while ivithin the cemetery grounds; for excluding improper persons and preventing improper assemblages therein; and shall fix and make reasonable charges for any acts and services ordered by the owner and rendered by the corporation in connection with the use, care, including perpetual, annual and special care, management and protection of lots, plots and parts thereof. In determining said charges the directors shall consider the propriety and the fair *1050 and reasonable cost and expense of rendering the services or performing the work for which such charges are made.
* * *
“ 3. * * * In making its determination as to the schedule of charges the cemetery board shall consider the propriety and the fair and reasonable cost and expense of rendering the services or performing the work for which such charges are made. In passing upon the rules and regulations, the cemetery board shall consider the interests of the members of the corporation and the public interest in the proper maintenance and operation of burial grounds.”
The statute is clear and unambiguous. It must be read and given effect as it is written — “not as a public officer charged with administering it may think it should have been written ’ ’ — (Matter of Powhatan Democratic Club v. Curran, 206 Misc. 960, 961-962). There is nothing in this principle of statutory construction in conflict with the settled rule that the interpretation given a statute by the administrative agency charged with its enforcement must be given great weight. That rule does not require that the court abdicate its duty to determine whether, in a given case, the administrative interpretation accords with legislative intent (see, e.g., Matter of Hines v. La Guardia, 293 N. Y. 207, 216).
This court cannot agree that the power vested by the statute in the Cemetery to promulgate ‘£ reasonable rules and regulations for the use, care, management and protection of the property of the corporation and of all the lots, plots and parts thereof ” includes the power to assess the charge in question. There is no power to assess except “ for any acts and services ordered by the owner and rendered by the corporation in connection with the use, care, [etc.] of lots, plots and parts thereof.”
The purpose of this charge is not, as stated in the letter to Goldsmith, “to compensate the cemetery for the use of roads and other facilities, general supervision, etc.” Its true purpose is to be found in the preamble to the Board’s order which reads, in relevant part, “ Since the success of the plan [of rehabilitation] depends upon the acquisition of additional income and the establishment of a care and gardening department, the Trustees have submitted a proposed schedule of increased service charges and a proposed schedule of charges for the care and gardening services.” (Emphasis supplied.) But whatever the intent and purpose of the charge, its practical effect, as concerns plot owners, is to limit and proscribe, and thus to deny, their right to *1051 care for their own plots through agents retained by them for the purpose. For it is clear that if this charge is sustained, Goldsmith and others similarly employed will be out of business, and owners who choose not to do their own work will be compelled to employ the Cemetery to do it for them.
The need for funds to provide proper maintenance and operation of the Cemetery, obviously, affords no justification for the imposition of a charge not authorized by the statute. Where there is need for funds to provide for necessary improvement and care, the statute prescribes the methods by which they may be obtained, and the methods so prescribed are exclusive. Section 86-a makes provision for the establishment of permanent and current maintenance funds; and if the means there provided for the creation of such funds are inadequate to assure necessary care, the cemetery may resort to the method of taxation of lot owners provided by section 90. True it is that the tax method prescribed by section 90 may be limited quantitatively and that the remedy of collection of assessments by execution of a warrant would be ineffective against impecunious owners. These problems, however, are matters of legislative concern.
Pursuant to the provisions of section 90 the Cemetery assessed and the Board approved a charge of $2 per annum upon private lot owners “ for each one hundred square feet or part thereof.” The Board’s order provides that this tax is waived where a lot owner provides for the maintenance and care of his own lot. It is contended that the tax, and waiver thereof as to those owners who provide their own care, tend “ to equalize the burden of maintenance by favoring those who provide care for graves, whether they do so themselves or through an outside gardener.” It is difficult to see how the burden of maintenance is equalized, or how those who employ outside gardeners are favored, when the charge imposed upon the gardeners clearly exceeds the tax imposed under section 90.
Plaintiffs are entitled to judgment for the relief demanded in the complaint, and dismissing the counterclaim.